FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

00 AUG 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| ARTIS JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. CV-98-B-3087-S |
| | ) | |
| FIREWORKS OF ALABAMA, INC., | ) | |
| dba CRAZY BILL'S FIREWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED

AUG 28 2000

## MEMORANDUM OPINION

This action is before the court on Defendant's Motion for Summary Judgment filed by defendant Fireworks of Alabama, Inc., doing business as Crazy Bill's Fireworks, Inc. ("Crazy Bill's" or "defendant"). Plaintiff Artis Johnson ("plaintiff" or "Johnson ") alleges that he was discriminated against on the basis of his race and constructively discharged in violation of 42 U.S.C. § 1981. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

### I. FACTUAL SUMMARY

Defendant is engaged in the retail sale of fireworks and operates such business on a seasonal basis. (DX[1] 1 (Aff. of Pamela Mosley) at ¶ 2.) Defendant owns and operates a number of business locations which sell fireworks each year for approximately two weeks prior to the

---

[1] "DX" refers to the exhibits listed in Defendant's Evidentiary Submission in Support of the Motion for Summary Judgment, filed on October 15, 1999. "PX" refers to the Exhibits listed in Evidentiary Submission in Support of Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, deemed filed on November 5, 1999.



Fourth of July holiday ("July season") and approximately two weeks prior to the New Year's Eve holiday ("Christmas season"). (*Id.*) For the remainder of the year, defendant does not have an active sales operation. (*Id.*) Defendant operates approximately eighty-five locations, thirty-five of which are in the greater Birmingham area. (*Id.*) The manager of each location is paid seventeen percent of the gross sales from his or her location. (*Id.* at ¶ 3.) Each manager makes his or her own decisions regarding the hiring and compensation of additional employees. (*Id.*; DX 2 (Dep. of Artis Johnson) at 26, 72.)

Plaintiff was assigned a manager position at Crazy Bill's on three occasions: (1) he operated and managed the Brighton location during the 1992 Christmas season; (2) he operated and managed the Adamsville location during the 1994 July season; and (3) he operated and managed the Adamsville location during the 1997 July season. (DX 1 at ¶ 4.)[2] Additionally, plaintiff has worked for other managers of various locations on other occasions. (*Id.*; PX 12.) Ronnie Kelly ("Kelly"), the incumbent manager at the Adamsville location, was assigned the Forestdale location for the 1997 summer season. (DX 1 at ¶ 6.) Defendant's policy is such that incumbent managers who have performed well are generally given a right of first refusal as locations become vacant. (*Id.*; DX 2 at 72.) Kelly managed the Adamsville location during the

---

[2] Plaintiff also alleges that he managed certain locations during other seasons as well, which include: (1) Jay's Body Shop in Bessemer during the 1989 Christmas season; (2) Bullock's Garage during the 1989 Christmas and July seasons; (3) Bullock's Garage during the 1990 Christmas and July seasons; (4) Bullock's Garage during the 1991 Christmas and July seasons; and (5) Bullock's Garage during the 1992 July season. (PX 12 (Aff. of Artis Johnson)). However, defendant disputes this contention, and stated that the business records do not reflect these allegations. (DX 1 at ¶ 4.) The court is of the opinion that whether plaintiff managed or merely worked in these locations from 1989 to 1992 is not relevant to the determination of this case.

Christmas season in 1996. (DX 1 at ¶¶ 6, 8; PX 12.) Plaintiff did not manage a location in 1996, but instead worked for Martha Sapp at the Midfield location and at the Green Springs location. (DX 2 at 42; PX 12.) Kelly was offered and accepted the Forestdale location for the 1997 July season, which created a vacancy at the Adamsville location. (DX 1 at ¶ 6, 8; PX 12.) The Adamsville location was then offered to plaintiff for the 1997 July season. (*Id.*; DX 2 at 44-45, 49.) During the time in which Kelly managed the Adamsville location, it out-performed the Forestdale location. (DX 1 at ¶ 7.) When Kelly transferred to the Forestdale location and plaintiff took over the Adamsville location, the Forestdale location out-performed the Adamsville location. (*Id.*)

Plaintiff alleges that he was assigned the less desirable Adamsville location for the 1997 July season based on his race. (DX 2 at 55-56, 63-64; PX 12; Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Br.") at 3-12.) Plaintiff also alleges that he was constructively discharged from Crazy Bill's in December of 1997. (DX 2 at 59-60; Pl's. Br. at 12-13.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

### III. DISCUSSION

#### A. Discriminatory Assignment

Plaintiff claims that defendant discriminatorily assigned him to the less favorable Adamsville location during the 1997 July season based on his race. (DX 2 at 55-56, 63-64; PX 12; Pl.'s Br. at 3-12.) Plaintiff alleges this discriminatory assignment was in violation of 42 U.S.C. § 1981.[3] (Am. Compl. at ¶ 1; Pl.'s Br. at 3.) In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Board of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's

---

[3] The relative burdens of proof in Title VII and § 1981 disparate treatment claims are the same. *Brown v. American Honda Motor Co., Inc.*, 9393 F.2d 946, 949 (11th Cir. 1991).

4

evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

There is no direct evidence to support plaintiff's discrimination claim. Thus, plaintiff must rely on circumstantial evidence to support his claims. Because plaintiff is relying on circumstantial evidence to support his claims, the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. "The facts necessarily will vary in [discrimination] cases, and the specification . . . of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n. 13.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58. In satisfying this burden:

> [t]he employer's burden of rebuttal is "exceedingly light." Since the rebuttal burden is one of production only, the employer "need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]."

*Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1495 (11th Cir. 1989) (quoting *Burdine*, 450 U.S. at 254-55) (alterations in original).

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs*, 106 F.3d at 1528 (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination or retaliation). *Id.* A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Id.* at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, plaintiffs must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons for the employment decisions were pretextual. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471-72 (11th Cir. 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiffs must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder would conclude that those reasons did not actually motivate the promotion decisions. *See Combs*, 106

F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

To establish a prima facie case of discrimination, plaintiff must prove (1) he is a member of a protected class; (2) he was qualified for the position he was doing or sought to do; (3) despite his qualifications and job performance, he was subjected to an adverse employment action; and (4) he was treated less favorably than employees or potential employees outside the protected group. *McDonnell Douglas,* 411 U.S. at 802; *Carter v. Three Springs Residential Treatment,* 132 F.3d 635, 642 (11th Cir. 1998); *Carter v. City of Miami,* 870 F.2d 578, 582 (11th Cir. 1989); *Washington v. General Motors Corp.,* 1992 WL 370620, at *4 (D. Kan. Nov. 24, 1992).

Plaintiff claims that he was discriminated against on the basis of his race when he was assigned the Adamsville location instead of the allegedly superior location in Forestdale.[4] (DX 2 at 55-56, 63-64; PX 12; Pl.'s Br. at 3-12.) Plaintiff contends that the Forestdale location had better gross sales and was ranked higher among defendant's various locations than the Adamsville location. (Pl.'s Br. at 5-8.) Although it is arguable as to whether plaintiff has suffered an adverse employment action, defendant concedes that there is a question of fact on this issue in its Reply Brief. (*See* Def.'s Reply Br. in Supp. of Mot. for Summ. J. ("Reply Br.") at 2.)

Assuming plaintiff has established a prima facie case, defendant has articulated a legitimate nondiscriminatory reason for the decision to transfer Kelly, a white male, to the Forestdale location. Defendant has put forth sufficient evidence establishing their policy of

---

[4] The Forestdale location, to which plaintiff desired to be assigned, was previously known as the "Scooters" location, but is currently known as the "Piggly Wiggly" location.

allowing managers from locations who have performed well the first opportunity to move to a new location should a manager position become available and should they choose to move. (DX 1 at ¶ 6; *see also* DX 2 at 72.)

Plaintiff has not put forth sufficient evidence on which a reasonable jury could find defendant's articulated reason to be pretext for illegal race discrimination. Plaintiff does not assert that he managed any location between 1994 and July of 1997. (*See* PX 12.) Thus, plaintiff did not manage a location in 1995 or 1996, prior to his assignment to the Adamsville location in July of 1997, and, therefore, was not an incumbent manager. Additionally, plaintiff expressly admits that Kelly managed a location during the 1996 Christmas season.[5] (Pl.'s Br. at 9; PX 12.)

Plaintiff alleges that he managed the "Circle C" location in Midfield for the 1994 Christmas season and fulfilled his goals, as set out by defendant, during that time period. (PX 12.) Plaintiff further alleges that since he met his goals during the 1994 Christmas season, he should have been awarded this location in the 1995 July season. (*Id.*) However, plaintiff alleges that defendant did not assign this location to him, but, instead, to a white person. (*Id.*) Plaintiff stated that he received no explanation as to why he was not awarded the manager position at this location. (*Id.*)

---

[5] Plaintiff makes inconsistent arguments in opposition to defendant's Motion: plaintiff stated in his brief that "Kelly did not work in the Adamsville store in 1996," (Pl.'s Br. at 9), and that "defendant offers no evidence whatsoever as to what Kelly did during the Christmas season of December 1996," (Pl.'s Br. at 10). However, he also stated that Kelly had only start[ed] managing his first trailer in December of 1996." (Pl.'s Br. at 9.)

These allegations are insufficient to establish pretext for several reasons. First, defendant's evidence and plaintiff's affidavit testimony shows that plaintiff was not a manager during the 1994 Christmas season. Further, there is no evidence that the management in 1994 was the same as the management responsible for the challenged decision in 1997. Additionally, plaintiff acknowledged in his deposition and in his affidavit that the "'top trailers' were normally offered to managers who had performed well and had high sales during the prior seasons. Once a trailer was offered, the manager was then given the right of first refusal for a specific trailer location." (PX 12; DX 2 at 72.)

As the Eleventh Circuit noted in *Clark v. Huntsville City Board of Education*, 717 F.2d 525, 528 (11th Cir. 1983), "[t]he Supreme Court views disparate treatment as something more than a simple cause and effect relationship between an employer's actions and the plaintiff's disappointed expectations." The court further stated that "[i]f the employer selects the person it believes is best qualified, an argument of pretext ordinarily will fail." *Id.* at 527. A court does "not sit as a super-personnel department that reexamines an entity's business decision." *Alpin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1501 (11th Cir. 1991), quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). Plaintiff has failed to offer any evidence on which a reasonable jury could find defendant's articulated reason to be pretext for illegal race discrimination. Therefore, defendant is entitled to judgment as a matter of law as to plaintiff's claim of discriminatory assignment.[6]

---

[6] The court stated its preliminary findings at oral argument on Defendant's Motion for Summary Judgment. Plaintiff subsequently filed a Motion to Reconsider Under Rule 59(e), dated July 5, 2000, ("First Mot. to Reconsider"), and a Motion to Reconsider, dated August 1, 2000, ("Second Mot. to Reconsider"). Plaintiff attached to each of these motions a copy of the

**B.     Constructive Discharge**

Plaintiff alleges that he was constructively discharged in that he was forced to quit because he believed defendant would not allow him to manage a more desirable location. (Pl.'s Br. at 12.) The standard for determining whether an employee has been constructively discharged is as follows:

> [I]f the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir. 1980) (citations omitted). In order to establish a claim for constructive discharge, plaintiff must show that his "working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Hill v. Winn-Dixie, Inc.*, 934 F. 2d 1518, 1527 (11th Cir. 1991) (citations omitted). The Eleventh Circuit requires evidence of "a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'" *Id.* A reasonable employee does not "assume the worst" or "jump to conclusions too fast." *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987).

---

United States Supreme Court's recent decision, *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097 (2000). Plaintiff contends that "this case stands for the proposition that a plaintiff can survive summary judgment by showing that the defendant's articulated reason is false." (First Mot. to Reconsider.) Citing *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1994), plaintiff further contends that *Reeves* "has a far reaching affect on several Eleventh Circuit cases, which affected the Johnson case." (Second Mot. to Reconsider at ¶ 2.) The court is of the opinion that *Reeves* has no bearing on the outcome of the case at bar. Further, plaintiff failed to establish that defendant's articulated reason was false.

10

Assuming plaintiff is an employee for purposes of this claim, he has not produced any evidence whatsoever that his working conditions were so "intolerable" that a reasonable person in his position would be compelled to resign. Plaintiff alleges that "he quit because he believed that he could not get a more desirable location." (*See* Pl.'s Br. at 12; *see also* DX 2 at 56-59.) Plaintiff does not allege that he suffered from reprimands, criticism, hostility, ugly remarks, embarrassment, discipline, or ostracism. There is no evidence establishing that plaintiff's working conditions were unpleasant, much less intolerable.

Further, plaintiff testified that he called Crazy Bill's management to inform them that he would not be running a trailer during the 1997 Christmas season. (DX 2 at 56.) Plaintiff testified that he did not tell anyone at Crazy Bill's why he did not wish to run a trailer for that season, but that it was because he felt that he had been treated unfairly in July of 1997, when he was not assigned to the Forestdale "Scooters" location, but instead was assigned to the Adamsville location. (*Id.* at 44-45, 57-58, 60, 63.) Thus, plaintiff was not acting as a reasonable employee inasmuch as he didn't voice his complaints, but instead "assumed the worst."

The evidence noted above falls far short of establishing a constructive discharge claim. "Mere dissatisfaction with a work assignment is not a basis for constructive discharge." *Rousselle v. GTE Directories Corp.*, 85 F.Supp.2d 1286, 1293 (M.D. Fla. 2000) (citing *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir. 1998)). Plaintiff has failed to establish a claim for constructive discharge and defendant is entitled to judgment as a matter of law on this claim as well.

## IV.  CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 28th day of August, 2000.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge